IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 09-151 |
| | ) | Civil No. 13-355 |
| KELLY HARDY, | ) | Judge Nora Barry Fischer |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I.      INTRODUCTION**

This matter is before the Court on a Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 ("Motion") filed by *pro se* Defendant Kelly Hardy ("Defendant" or "Hardy"). (Docket No. 101). Defendant seeks to vacate his convictions for possession, receipt and transportation of child pornography and the sentence of 360 months imposed by this Court on October 4, 2010 because he alleges that he was provided ineffective assistance of counsel prior to the entry of his guilty plea to all counts. (Docket No. 104). Defendant claims that his counsel induced him to plead guilty by promising him that a sentence of ten years' incarceration would be imposed, thus rendering his guilty pleas unknowing and involuntary. (*Id*. at 5). Hardy further suggests that his counsel was ineffective for erroneously advising him that significant sentencing enhancements would not apply in his case and for underestimating the advisory guidelines range as 151-188 months prior to his guilty pleas rather than the range of 360 to life which was ultimately calculated by the Court and from which he was sentenced to 360 months. (*Id*. at 8-9). The Government opposes Defendant's motion and argues that Defendant's claims of ineffective assistance are not credibly established in light of the Court's comprehensive change of plea colloquy. (Docket No. 106). The Government points out that Defendant asserted during this proceeding that he was not made any promises about the length of the sentence which was

imposed by the Court and further that he fully understood that the advisory guidelines range articulated by counsel at the proceeding was merely an estimate and that it was the Court's role to ultimately calculate the advisory guidelines range. (*Id*. at 2). The Government also maintains that Defendant was not prejudiced by his trial counsel's representation given the overwhelming evidence of Defendant's guilt and his expressed intent to plead guilty to the charges. (*Id*.). Upon consideration of the parties' positions and the filings of record, for the following reasons, Defendant's Motion [101] is DENIED.

## II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On May 5, 2009, a federal grand jury returned a three-count indictment against Defendant, charging him with the Transportation of Child Pornography, in violation of 18 U.S.C. § 2252(a)(1) (Count One), Receipt of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2) (Count Two) for conduct occurring on or about May 1, 2008 to on or about April 16, 2009 and Possession of Child Pornography in violation of 18 U.S.C. § 2252(a)(4)(B) (Count Three) on or about April 16, 2009. (Docket No. 11). The potential penalties at Counts One and Two included a statutory mandatory minimum sentence of not less than five years' incarceration and up to twenty years, *see* 18 U.S.C. § 2252(b)(1), while Defendant faced a sentence up to ten years at Count Three. *see* 18 U.S.C. § 2252(b)(2). Defendant did not have any prior criminal history. He was represented by Assistant Public Defender W. Penn Hackney, Esquire, throughout the proceedings before the District Court.[1] Assistant United States Attorney Craig Haller prosecuted the case on behalf of the Government.

---

[1]     W. Penn Hackney graduated from Cornell Law School in 1978 and was admitted to practice in Pennsylvania, the U.S. District Court of the Western District of Pennsylvania and the U.S. Third Circuit Court of Appeals in 1979 and then the Supreme Court in 1985. Due to his extensive experience within the Federal Public Defender's Office, Hackney has earned the title of Senior Litigation Counsel.

Initially, Defendant pled not guilty to the charges on May 14, 2009. (Docket No. 14). At Defendant's request, the Court held a change of plea hearing on October 22, 2009 during which Defendant pled guilty to all three counts against him. (Docket No. 26). At the time of his guilty plea, Defendant was 39 years old, had attained an Associate's degree in computer science and was working towards a Bachelor's degree. (Docket No. 50 at 3-4). At his change of plea hearing, he claimed no difficulty communicating with his attorney or the Court. (*Id*. at 4-5). He also averred that he was not under the influence of drugs or alcohol nor was he under the ongoing care of a physician, therapist, psychologist or psychiatrist for any ailments which would have affected his ability to understand the proceedings. (*Id*. at 5-6). Defendant stated that he fully understood the proceedings, and his counsel also believed that Defendant was competent to plead. (*Id*. at 6-7). The Court concluded that Defendant was competent to meaningfully participate in the proceeding based on his responses to the Court's questions and demeanor in the courtroom. (*Id*. at 7). By all accounts, Defendant presented himself as a sophisticated individual who was more than capable of participating in the proceedings and understanding them.

During this change of plea proceeding, Defendant stated that he was satisfied with the representation provided by Mr. Hackney and that he understood the charges against him. (*Id*. at 7-8). Following the Court's recitation of the constitutional rights and protections that would be waived if he pled guilty to the charges (*Id*. at 10-14), the Court outlined the potential sentence which could be imposed at each count. (*Id*. at 14). In response, Defendant acknowledged that he understood that he faced significant statutory penalties if he pled guilty to the charges, including mandatory minimum sentences of imprisonment of five years and up to twenty years for each of Counts One and Two and a sentence of up to ten years at Count Three. (*Id*. at 14-15). He further

3

recognized that restitution was potentially owed and acknowledged the consequences of violating the terms of supervised release. (*Id*. at 15-16).

The Court next thoroughly advised Defendant how his sentence would be determined. (*Id*. at 16-17). Defendant responded that he understood that although the Sentencing Guidelines would be considered by the Court, they were only advisory and the Court had discretion to sentence him to a term of imprisonment outside of the advisory guidelines range so long as such sentence was within the statutory minimum and maximum penalties. (*Id.* at 17). Defendant acknowledged that he discussed the potential effect of the Sentencing Guidelines with his counsel and understood that a sentence would not be imposed until after the Court had an opportunity to read and analyze the Presentence Investigation Report ("PIR"), which had yet to be prepared. (*Id.* at 18-19). AUSA Haller informed the Court of his position as to the advisory guidelines range, stating that he believed that Defendant's adjusted offense level would be 34, and that the advisory guidelines range would be 151-188 months. (*Id*. at 19). Defense counsel concurred with the Government's calculation. (*Id*.). The Court then directly questioned Defendant about the parties' estimates, "[d]o you understand that I'm not bound by any recommendation of a sentence either Mr. Hackney and/or the government's attorney may have suggested to you, and I can sentence you up to the maximum sentence permitted by the statute." (*Id*. at 20). Without hesitation, Defendant affirmatively responded that he understood. (*Id*.).

After the AUSA summarized each of the elements of the offenses that it would have been required to prove beyond a reasonable doubt at trial, (*Id*. at 21-22), the Assistant U.S. Attorney summarized the Government's evidence against Defendant as follows:

> During January of 2009, ICE agents in Mississippi executed a search warrant at the residence of a man who possessed and distributed child pornography. Upon reviewing the man's computer, agents located chats the man had with Mr. Hardy. The chats were very sexually explicit and included

statements by Defendant about breaking into homes, raping children, killing them, and making their parents watch. The evidence on the computer also revealed that Mr. Hardy had sent and received child pornography files.

During the investigation, the National Center for Missing and Exploited Children was consulted, and it was determined that a complaint had been made about Mr. Hardy by the mother of a twelve-year-old girl in Kentucky in 2004. The investigating ICE agents eventually tracked Mr. Hardy to his residence in New Castle, Pennsylvania.

On April 16th, 2009, a federal search warrant was served at Mr. Hardy's residence. A tremendous amount of computer and electronic equipment was seized, including 14 desktop computers, 3 laptop computers, 60 hard drives, over 4,000 compact disks and digital versatile disks, over 3,000 floppy disks, eight thumb drives, 36 zip disks, two camcorders, one Palm Pilot, one digital camera, one 35-milimeter camera, two webcams, one cellphone and over 800 videotapes. Also seized were thirty-three pairs of soiled young girls' underwear.

During an interview on April 16, 2009, Mr. Hardy admitted that he acquired the underwear by taking them from houses in which he was invited by friends or acquaintances. He would look for the underwear, and then, he would subsequently take the underwear and ejaculate into them. Mr. Hardy also admitted transporting, receiving and possessing child pornography via computers and internet.

Forensic analysis of the computers confirmed Mr. Hardy possessed thousands of images of child pornography, transported many images to others via computer and received many images from others via computer. Many of the images are of young children engaged in sexual acts.

(*Id*. at 22-24). Defendant did not disagree with the facts presented, but only wished to clarify that the internet chats were about fantasies, not about actual events and that most of the pairs of girls' underwear seized by the agents was new and not soiled. (*Id*. at 24-25).

Defendant then confirmed that his act of pleading guilty was voluntary, and assured the Court that no one had made any promise, prediction or suggestion other than the potential advisory guidelines range, as to what sentence would be imposed by the Court at the time of sentencing. (*Id*. at 26-27). Defendant stated that he had not been instructed by anyone to respond untruthfully to any question concerning a promised sentence, and that he still wished to plead guilty to all the charges. (*Id*. at 27). He again acknowledged that his guilty pleas were voluntary

and the product of his own free will. (*Id*. at 27-28). Immediately before entering his guilty pleas,

Defendant reaffirmed that he was satisfied with the advice and representation of his counsel,

Hackney (*Id*. at 28). The Court then accepted Defendant's guilty plea, stating that:

> Mr. Hardy, since you are competent, since you know and understand your right to
> a trial, and the consequences of giving up that right, since you know the potential
> possible penalty, and since you are voluntarily pleading guilty, this Court now
> accepts your guilty plea, finds you guilty of the offenses for which you are
> pleading guilty, and enters a judgment of guilty on your pleas.

(*Id*. at 29). The Court ordered the Probation Office to prepare a PIR and specifically advised

Defendant that he would have the opportunity to present additional information regarding the

PIR, "as well as other matters you [Defendant] feel you should put in front of this court." (*Id*. at

30). The PIR was produced by the Probation Office and distributed to the parties and the Court

on December 30, 2009. The Probation Office calculated the advisory guidelines range in

Defendant's case as 360 months to life due to several enhancements, well in excess of the

proffered range at Defendant's change of plea hearing.

Following the completion of the PIR, the Government submitted its Position with

Respect to the Sentencing Factors on January 27, 2010 (Docket No. 30), and Defendant

submitted his position on February 5, 2010. (Docket No. 34). Defendant objected to the

Probation Office's application of two separate five-level enhancements (Guideline §§

2G2.2(b)(3)(B)[2] and § 2G2.2(b)(5)[3]) on the grounds that these enhancements had not been

included with the Government's initial estimation of the advisory guidelines. (Docket No. 34).

The Court issued its Tentative Findings and Rulings on April 19, 2010, overruling Defendant's

---

[2]      § 2G2.2(b)(3)(B) provides a five level enhancement if the offense involved "[d]istribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain."

[3]      § 2G2.2(b)(5) provides a five level enhancement "[i]f the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." Further, § 2G2.2, Application Note 1 explains that a "'[p]attern of activity involving the sexual abuse or exploitation of a minor' means any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same minor; or (C) resulted in a conviction for such conduct."

objections to the applicability of said enhancements and adopting the Probation Office's calculation of the advisory guidelines range of 360 to life imprisonment. (Docket No. 54). First, the Court concluded that the enhancement under Guideline § 2G2.2(b)(3)(B) for distributing child pornography in exchange for a "thing of value" properly applied because Defendant traded child pornography with other individuals in exchange for more child pornography. (*Id.* at 6). Second, the Court determined that Defendant's past sexual relationship with a female, beginning when she was fourteen years old, constituted a pattern of abusive conduct under Guideline § 2G2.2(b)(5), because even though such relationship was allegedly consensual, the sexual relationship violated 18 U.S.C. § 2243 for sexual abuse of a minor. (*Id.* at 7-8).

The Court also overruled Defendant's objection that the Probation Office's recommended advisory guideline range of 360 to life should be disregarded in favor of the Government's initial estimate of 151-188 months proffered at the change of plea hearing. (*Id.* at 5-6). In so holding, the Court noted that Defendant had not entered into a plea agreement which would have bound the Court to the parties' proffered initial positions. (*Id.*). Further, the Court found that during the change of plea hearing, Defendant affirmatively acknowledged all of the following:

> (1) that the Court would not be able to determine the advisory guidelines range until after the PIR was completed; (2) that the Court was not bound by any recommendation of a sentence that either the Government, through its counsel, or his counsel had suggested to him; and, (3) that the Court could sentence him up to the maximum sentence permitted by statute, i.e., twenty years at Counts 1 and 2, and five years at Count 3.

(*Id.* at 5-7 (citing Docket No. 50 at 13-19, 26-28)).

The Court tentatively calculated the advisory guidelines range with the two challenged five-level enhancements included. (Docket No. 54 at 9). Thus, the Court found that Defendant's total offense level was 42, which along with a criminal history category of I, resulted in an

advisory guideline range of 360 months' imprisonment to life. (*Id*. at 10-11).[4] Thereafter, Defendant's sentencing proceeding was continued multiple times and was eventually held over a period of two separate sessions. The parties' positions were exhaustively briefed in sentencing memoranda. (Docket Nos. 30, 34, 37). Defense counsel Hackney dutifully advocated that a sentence of ten years' incarceration was appropriate while AUSA Haller recommended that a guidelines sentence of at least 360 months' incarceration be imposed. At the first hearing on August 12, 2010, Defendant answered affirmatively that he had read the PIR, the addendum, the Court's Tentative Findings and Rulings, and the Amended Tentative Findings and Rulings. (Docket No. 87 at 5-6). Additionally, Defendant stated that he had reviewed and discussed those documents with counsel, and that he had no further questions for the Court at that time. (*Id*. at 6-7).[5]

At the second session of the sentencing hearing on October 4, 2010, Defendant stated that he had read the Court's Tentative Findings and Rulings and acknowledged that he also read the Court's Supplemental Tentative Findings which contained the Court's factual findings as to the evidence presented at the prior hearing. (Docket No. 86 at 6-7). Defendant further answered that he had spoken with counsel about any concerns regarding these documents and that he had no questions for the Court at that time. (*Id*. at 7). Counsel for the parties then provided oral argument as to the potential sentence to be imposed. When given the opportunity by the Court to

---

[4]    As the parties litigated these sentencing issues as to the advisory guidelines factors, they were also litigating the issue of restitution owed to the victims, an issue which involved substantial briefing by the parties and counsel for the victim, "Amy," as well as a hearing on March 15, 2010. (Docket No. 49). The Court issued a decision on the restitution issue on the same date it issued its Tentative Findings and Rulings concluding that restitution was due to "Amy" but required further information concerning the damages proximately caused to "Amy" by Defendant's criminal possession, receipt and distribution of child pornography. (Docket No. 53). Ultimately, Defendant reached a stipulation with "Amy"'s counsel and the Court ordered that $1,000 in restitution of be paid to "Amy". (Docket No. 64).

[5]    The Court then accepted evidence from the parties, including the testimony of Defendant's expert medical witness, Dr. Jolie Brams. (Docket No. 87). The sentencing was then continued until September 28, 2010 to allow the Court time to review the testimony of Dr. Brams. (Docket No. 68). Defendant moved to continue the sentencing hearing once more, which was granted by the Court and re-set for October 4, 2010. (Docket Nos. 72, 73, 74).

make a statement prior to sentencing, Defendant expressed regret for his actions, but did not address any issue regarding his plea or possible sentence. (*Id.* at 46-47). After carefully considering the parties' positions and weighing all of the § 3553(a) factors, the Court imposed a sentence of 240 months' imprisonment at Count One with a consecutive term of 120 months' for Count Two, for a total term of 360 months' imprisonment, along with a life-term of supervised release. (*Id.* at 58). No sentence was imposed as to Count 3 because it merged with Count 2 for sentence purposes. (*Id.*). Defendant swiftly appealed his sentence on October 14, 2010. (Docket No. 77). The Court of Appeals affirmed this Court's decision on December 20, 2011 and expressly held that the sentence of 360 months was both procedurally and substantively reasonable. *United States v. Hardy*, 454 F.App'x 132, 134-35 (3d Cir. 2011). To this end, in affirming this Court's sentencing, the Court of Appeals rejected Defendant's arguments that the advisory guidelines range was incorrectly calculated and concluded that the sentence of 360 months which was imposed was supported by the evidence of record. *Id.*

Defendant's motion to vacate was timely filed as of March 6, 2013 under the prisoner mailbox rule.[6] He also filed a Motion for Leave to file a supplemental memorandum. (Docket No. 103). This Court responded by entering its standard order pursuant to *United States v. Miller*, 197 F.3d 644 (3d Cir.1999), advising Defendant that all federal constitutional claims must be included in a single habeas corpus petition and of his right to: (1) withdraw the pending petition and file one new, all-inclusive § 2255 petition setting forth every ground which may entitle him to relief from the conviction and sentence, provided that such motion is filed within the one year statute of limitations; (2) amend the § 2255 petition presently on file with any additional claims or materials within 120 days; or (3) choose to have the petition ruled on as filed. (Docket No.

---

[6]     The Government concedes that Defendant's Motion was timely made under 28 U.S.C. 2255(f)(1) and the prisoner mailbox rule. (Docket No. 106). As such, timeliness is not an issue.

103). The Court also granted leave to file the supplemental memorandum within 30 days. (*Id.*).

Defendant then submitted his supplemental memorandum on April 25, 2013. (Docket No. 104).

The Court ordered the Government to respond and it filed a brief in opposition along with its

exhibits on May 19, 2013.[7] (Docket No. 106). No further briefing has been ordered and the Court

considers the matter fully briefed and ripe for disposition.

### III.   LEGAL STANDARD

Petitioner filed the instant motion challenging his sentence under 28 U.S.C. § 2255(a),

which provides that:

> A prisoner in custody under sentence of a court established by Act
> of Congress claiming the right to be released upon the ground that
> the sentence was imposed in violation of the Constitution or laws
> of the United States, or that the court was without jurisdiction to
> impose such sentence, or that the sentence was in excess of the
> maximum authorized by law, or is otherwise subject to collateral
> attack, may move the court which imposed the sentence to vacate,
> set aside or correct the sentence.

28 U.S.C. § 2255(a). Thus, a criminal defendant "is entitled to relief only if he can demonstrate

that he is in custody in violation of federal law or the Constitution." *Hernandez v. United States*,

Civ. A. No. 07–752, 2008 WL 3843510, at *2 (D.N.J. 2008).

In order for a district court to correct a criminal defendant's sentence pursuant to a § 2255

motion to vacate, it must find "that ... judgment was rendered without jurisdiction, or that the

sentence imposed was not authorized by law or otherwise open to collateral attack, or that there

has been such a denial or infringement of the constitutional rights of the [defendant] as to render

the judgment vulnerable to collateral attack." *Garcia v. United States,* 2008 WL 1375571, at *2

(D.N.J. Apr. 9, 2008) (internal quotation and citation omitted). A criminal defendant bears the

burden of establishing his entitlement to § 2255 relief. *United States v. Davies,* 394 F.3d 182,

---

[7]     The Government's exhibits consist of the Change of Plea and Sentencing Hearings held before this Court.

189 (3d Cir. 2005). Moreover, as a § 2255 motion to vacate is a collateral attack on a sentence, a criminal defendant "must clear a significantly higher hurdle than would exist on direct appeal" to obtain relief. *See United States v. Bohn,* 1999 WL 1067866, at *3 (E.D.Pa. 1999) (quoting *United States v. Frady,* 456 U.S. 152, 166, (1982)). The court is required to construe *pro se* pleadings liberally. *See United States v. Otero,* 502 F.3d 331, 334 (3d Cir. 2007) (citing *Haines v. Kerner,* 404 U.S. 519, 520 (1972)). However, "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation." *United States v. Knight,* 2009 WL 275596, at *13 (W.D.Pa. 2009) (quoting *United States v. Thomas,* 221 F.3d 430, 437 (3d Cir. 2000)).

Generally, a district court must order an evidentiary hearing in a federal habeas case if a criminal defendant's § 2255 allegations raise an issue of material fact. *United States v. Biberfeld,* 957 F.2d 98, 102 (3d Cir.1992). But, if there is "no legally cognizable claim or the factual matters raised by the motion may be susceptible of resolution through the district judge's review of the motion and records in the case," the motion may be decided without a hearing. *United States v. Costanzo,* 625 F.2d 465, 470 (3d Cir. 1980); *see also United States v. Lilly,* 536 F.3d 190, 195 (3d Cir. 2008). If a hearing is not held, the district judge must accept the criminal defendant's allegations as true "unless they are clearly frivolous on the basis of the existing record." *Gov't of Virgin Islands v. Bradshaw,* 726 F.2d 115, 117 (3d Cir.1984).

> It long has been established that there is no federal constitutional right to counsel when mounting a collateral attack upon a criminal conviction. *Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987). While Rule 8 of the Rules Governing § 2255 Proceedings requires the appointment of counsel where an evidentiary hearing is warranted, *see also United States v. Bendolph,* 409 F.3d 155 (3d Cir. 2005), the decision to appoint counsel in a § 2255 proceeding otherwise is left to the discretion of the court. *See* 18 U.S.C. § 3006A(a)(2)(B). ("[w]henever ... the court determines that the

interests of justice so require, representation may be provided" in a
§ 2255 proceeding) (emphasis added).

*United States v. Wilson,* 2011 WL 1877654, at n. 1 (W.D.Pa. 2011). The Court resolves the

pending motion without holding a hearing because, for the reasons set forth *infra,* assuming

Defendant's allegations as true, he is not entitled to the relief requested in his § 2255 petition.

## IV. DISCUSSION

Defendant claims that he was provided ineffective assistance of counsel during the

change of plea stage of this case. (Docket No. 104). He avers that his counsel, Hackney, advised

him that a sentence of 120 months would be imposed and further contends that Hackney was

deficient in his erroneous estimation of the advisory guidelines range in comparison to the

ultimate sentence imposed by this Court. (*Id*. at 4-5). Defendant claims prejudice based upon an

assertion that he would have insisted on going to trial had his counsel not committed such errors.

(*Id*. at 10). The Government maintains that Defendant has failed to demonstrate that his counsel

provided to him deficient advice or that he has been prejudiced by ineffective representation and

asks that the Court deny Defendant's motion without an evidentiary hearing. (Docket No. 106 at

22).

### A. *Ineffective Assistance of Counsel Claim*

The Sixth Amendment right to counsel provides that an accused is entitled to the

effective assistance of counsel at all phases of the prosecution of criminal charges, *see Missouri*

*v. Frye*, 132 S. Ct. 1399, 1404 (2012), including during the plea-bargaining process and the entry

of a guilty plea. *Lafler v. Cooper*, 132 S.Ct. 1376, 1384 (2012). Although not specifying the

particular requirements of effective assistance, the Sixth Amendment relies "on the legal

profession's maintenance of standards sufficient to justify the law's presumption that counsel

will fulfill the role in the adversary process that the Amendment envisions." *Strickland v.*

*Washington,* 466 U.S. 668, 687 (1984). A petitioner claiming that his Sixth Amendment rights have been violated must satisfy a two part test demonstrating that his counsel was ineffective by proving that counsel's performance was deficient and that he was prejudiced by the deficient representation. *Strickland,* 466 U.S. at 687. If either prong of this test is not satisfied, this Court has discretion to deny a motion claiming ineffective assistance of counsel. *Id.* For the following reasons, the Court finds that Defendant cannot meet his burden to demonstrate that he was provided ineffective assistance by his trial counsel and/or that he was prejudiced by such representation.

1. <u>Was Counsel's Representation Objectively Unreasonable?</u>

To satisfy the first prong of the *Strickland* test, the defendant must show that "counsel's representation fell below an objective standard of reasonableness." *Hill v. Lockhart*, 474 U.S. 52, 57 (1985) (citing *Strickland*, 466 U.S. at 687-688). An attorney's performance is constitutionally sufficient if "counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Lockhart*, 474 U.S. at 52 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). Due to the wide latitude of tactical decisions counsel must make to address a variety of circumstances, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Therefore, a petitioner asserting a claim of ineffective assistance of counsel must specifically identify the attorney's actions that were allegedly not reasonable and demonstrate that such actions failed to meet the standard of professional responsibility. *Id.* at 690.

Defendant first argues that counsel's representation was deficient because Hackney assured Defendant that he would receive a sentence near the statutory minimum of ten years and claims that he was unaware of his ultimate sentencing exposure. (Docket No. 104 at 8). The

Government counters that Defendant's assertion is contradicted by his own responses during the Court's lengthy colloquies at his change of plea and sentencing hearings and that defense counsel's advice to plead guilty was satisfactory representation. (Docket No. 106 at 2).

Based upon the Court's review of Defendant's own pleadings and responses under oath, Defendant's actions have clearly contradicted his assertions that he was told by counsel that he would receive a sentence of ten years' imprisonment and that he did not fully understand his sentencing exposure. In his own brief, Defendant relates how during plea negotiations with the Assistant U.S. Attorney, he was aware "that [he] would plead guilty to an "open plea," a **non-binding** agreement that the presiding judge **would not be bound by**." (Docket No. 104 at 4) (emphasis added). Additionally, Defendant knew that "[a]s part of that [open plea] agreement, counsel for the government and defense counsel did a preliminary **estimate** of the applicable Sentencing Guidelines provisions." (*Id.*). After both sides determined that the Guideline range was 151-188 months, Defendant was apprehensive, (*Id.* at 4-5), but "[c]ounsel assured him that his position that the numbers tossed about were **estimates**, and that it would be his **position** that a sentence at or near the 120 month minimum term permitted by statute would be appropriate." (*Id.* at 5) (emphasis added).

Defendant's pre-plea impressions reveal that Defendant had sufficient knowledge that counsel could not guarantee that any particular sentence would be imposed by this Court. Defendant knew that the Court had full discretion not to fashion a sentence as recommended by the parties and that he was pleading guilty without any agreement with the U.S. Attorney's Office. (*Id.* at 4). Further, as counsel was advocating for the 120 month statutory minimum below the proffered estimates (*Id.* at 5), Defendant knew that his potential sentence was not confined to the estimated guideline range, but rather the statutory range. Additionally, by

14

advocating for the ten-year statutory minimum for Counts One and Two, Defendant was aware that those convictions would not be grouped together; otherwise he would have only faced a potential five-year minimum sentence for each count that ran concurrently. (*Id.* at 5).

Defendant's statements made under oath at the change of plea hearing further controvert his present arguments. At that time, Defendant expressed his understanding to the Court that Counts One and Two both carried separate statutory maximum penalties of twenty years and mandatory minimum sentences of five years. (Docket No. 50 at 14-15). He also stated he had discussed the guidelines with counsel. (*Id.* at 18-19). Defendant further represented that he knew the Court had discretion to sentence outside the Guideline range so long as it fell within the statutory maximum and minimum penalties. (*Id.* at 17). After hearing the parties' positions that his offense level was 34 with a Guideline range of 151-188 months, (*Id.* at 19), Defendant again stated he understood the Court's instruction that he could be sentenced up to the statutory maximum despite any agreed upon recommendations by the parties. (*Id.* at 20). The Court informed Defendant that his sentence would not be imposed until after the PIR was prepared and reviewed. (*Id.* at 19-20). In addition, twice Defendant told the Court that he was fully satisfied with the advice and representation from his trial counsel, Hackney. (*Id.* at 7, 28).

Following the hearing, the PIR was prepared and the Probation Office recommended that Defendant's Guideline range was 360 months to life imprisonment. Defendant was given an opportunity to review the report and object to its findings. (Docket No. 34). He recounts the circumstances of same in his brief, as follows: "[w]hen Petitioner expressed his shock that he would face a possible life sentence for his conduct in this case, Attorney Hackney assured him that Counsel **would still advocate for a ten-year term.**" (Docket No. 104 at 6) (emphasis added). At this point, Defendant explained that "Counsel expressed his **belief**" that the sentence

would be closer to the statutory minimum than the guidelines range. (*Id*.) (emphasis added). Again, Defendant's own position undermines any argument that he was promised a sentence of ten years by Hackney. At most, Hackney promised to be a zealous advocate on his behalf and argue that a sentence of ten years should be imposed. From the Court's perspective that is exactly what occurred in this case. Defense counsel advocated for a lesser sentence, arguing against the application of the five-level enhancements. (Docket No. 50 at 6). However, the Court denied counsel's sentencing arguments and concluded in its tentative findings that the Guideline range was indeed 360 months to life. (Docket No. 54 at 11).

The record further discloses that Defendant never raised this present allegation that he was promised a sentence of ten years, despite multiple opportunities to do so. As such, he never repudiated his sworn statements at the change of plea hearing that no one, including Hackney, had promised him anything regarding a sentence. At his first sentencing hearing, Defendant was asked by the Court whether he had reviewed the PIR and tentative findings and rulings with his counsel and he responded affirmatively as well as stating that he had no additional questions for the Court. (Docket No. 87 at 56). Defendant told the Court at the second session that he had no questions regarding the tentative findings. (Docket No. 86 at 7). When asked to make a statement before the Court prior to being sentenced, Defendant expressed regret and did not address his concerns with sentencing. (*Id*. at 46-47). Defendant was then sentenced for 360 months' imprisonment, but blames this on counsel because his "**prediction** proved to be erroneous." (Docket No. 104 at 6) (emphasis added).

As noted by the Court, Defendant has made clear that Hackney only made estimates as to his ultimate sentence, but never guaranteed that he would receive only the ten year minimum sentence. (*See* Docket No. 104 at 4-6). Additionally, although claiming he was unaware of his

sentencing exposure, Defendant never alleges that Hackney failed to inform him that he could potentially face the maximum statutory sentence of forty years. Instead, he informed the Court that he understood that both Counts One and Two carried a separate twenty years' imprisonment statutory maximum and that the Court could sentence outside of the Sentencing Guidelines, so long as it was within the statutory maximum and minimum sentences. (Docket No. 50 at 14-15, 17). Therefore, Hackney's advice and representations to Defendant regarding a potential sentence of ten years' imprisonment does not constitute ineffective assistance of counsel.

Defendant further contends that he suffered from ineffective assistance because a reasonably competent attorney would have anticipated the two five-level enhancements which were applied in the PIR and during the eventual sentencing. (Docket No. 104 at 8). The Court recognizes that the AUSA and defense counsel incorrectly projected Defendant's initial Guideline range of 151-188 months when their positions were requested by the Court at Defendant's change of plea hearing. (Docket No. 50 at 19). They were both incorrect because neither the AUSA nor Defendant's attorney originally anticipated that the two five-level enhancements applied. (Docket No. 50 at 19). However, the Third Circuit Court of Appeals has explained that defense counsel who failed to appreciate possible enhancements and departures is not constitutionally deficient:

> [w]e recognize that the maximum sentence authorized by law is often so extraordinarily long that few defendants other than "career criminals" plead guilty with the expectation that the maximum sentence applies to them. However, all that the law requires is that the defendant be informed of his/her exposure in pleading guilty. The law does not require that a defendant be given a reasonably accurate "best guess" as to what his/her actual sentence will be; nor could it, given the vagaries and variables of each defendant's circumstances and offending behavior.

*United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007) (citing *United States v. Mustafa*, 238 F.3d 485, 492 n. 5. (3d Cir. 2001)). Thus, counsel's representation is not constitutionally

deficient if he advises his client of an estimated advisory guidelines range that is later incorrect if Defendant understands it was an estimate and is correctly advised of the potential statutory penalties for the offense. *See Jackson v. United States*, 2008 WL 5429695, at *18 (W.D.Pa. Dec. 30, 2008) (holding that the petitioner voluntarily and knowingly plead guilty because the record demonstrated that he knew he could receive a sentence up to the statutory maximum and that a precise advisory guidelines range would not be calculated until the completion of the PIR).

As has been discussed above, the record fully demonstrates that Defendant was fully aware that Hackney provided only estimates of the sentencing range. The Court had requested both parties to provide their original positions for the advisory guidelines ranges. (Docket No. 50 at 19-20). After expressing their initial positions regarding the advisory guidelines range, the Court directly informed Defendant that it would not be bound by these initial recommendations, and Defendant responded that he understood. (*Id*. at 20). As *Shedrick* illustrates, Hackney did not supply Defendant with ineffective assistance of counsel by presenting to the Court an incorrect initial estimate of the advisory guidelines range given the failure to anticipate possible enhancements.

Therefore, the Court finds that Defendant has not satisfied the first prong because he has failed to show that he suffered from ineffective assistance of counsel. Defendant made it abundantly clear throughout his brief that counsel was only ever estimating his possible sentence of ten years. (Docket No. 104 at 4-6). Further, the failure to consider guideline enhancements does not amount to deficient representation because the "law does not require that a defendant be given a reasonably accurate 'best guess' as to what his/her actual sentence will be." *Shedrick*, 493 F.3d at 299. Instead, the record shows that defense counsel's only promise to Defendant was that he would advocate on his behalf for a ten-year sentence. (*Id*.). Accordingly, based on the

18

record evidence, the Court finds that Hackney's representation of Defendant was objectively reasonable.

Although the Court's analysis could end here, for completeness, the Court will continue to evaluate the second prong as if Defendant had presented sufficient evidence to demonstrate error by his counsel.

2.   <u>Was Defendant Prejudiced by Counsel's Sentencing Predictions?</u>

If the first prong is met, then, the petitioner "must show that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. In that regard, he "must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Specifically, "defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lockhart*, 474 U.S. at 59. A strong factor to consider is a "prediction whether the [errors] likely would have changed the outcome of a trial." *Id.* The Court included this prejudice requirement because, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.

In this Court's opinion, even if counsel's representation was below the objective reasonableness standard, Defendant would not satisfy the second prong of the *Strickland* test. To this end, Third Circuit precedent has made clear that "misrepresentations" or "erroneous predictions" of possible sentences or guideline ranges do not amount to prejudice and render a guilty plea involuntary or unknowing if the defendant had been informed by the Court of the maximum potential penalties for the convictions and of the Court's discretion to impose a sentence outside the advisory guidelines range. *See e.g.*, *United States v. Harris*, 2013 WL

357236 *4, (W.D.Pa. Jan 29, 2013) (holding that counsel's failure to advise the defendant of career offender provision and its effects on the guideline provisions did not amount to miscarriage of justice due to lengthy and extensive sentencing colloquy); *Shedrick*, 493 F.3d at 299 (holding that defense counsel's estimates based upon a failure to consider potential enhancements or departures were "irrelevant" where the defendant signed a plea agreement and the Court conducted a detailed colloquy advising the defendant of the maximum potential sentence and Court's full discretion to levy the ultimate sentence); *United States v. Jones*, 336 F.3d 245, 254 (3d Cir. 2003) (no prejudice found where the defendant was sentenced to a term greater than the range guaranteed by counsel because the District Court engaged in an extensive colloquy which "clearly warned" the defendant of the maximum sentence and the defendant informed the court that no one had made any threat, promise or assurance to convince him to plead guilty); *United States v. Mustafa*, 238 F.3d 485, 492 (3d Cir. 2001) (holding that the defendant interpreted counsel's best estimate as a promise of the sentence he would receive and that any possible attorney error regarding a potential sentence was "dispelled when Mustafa was informed in open court that there were no guarantees as to sentence, and that the court could sentence him to the statutory maximum").

In this instance, the Court undertook a lengthy and extensive colloquy that informed Defendant of all his rights and thoroughly explained the application of the sentencing guidelines. (*See* Docket No. 50). Both parties were incorrect when they initially determined that the advisory guidelines range was 151 to 188 months, but the Court's colloquy with Defendant and Defendant's sworn responses to the Court's questions conclusively demonstrate that the Defendant did not suffer any prejudice as a result of the erroneous predictions. It is well-settled that a defendant's "[s]olemn declarations in open court carry a strong presumption of verity."

*Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Under oath, Defendant stated that he understood that the maximum possible sentence for both Counts One and Two were twenty years' imprisonment for a total of forty years, and that regardless of any recommendation from the parties, the Court could impose a sentence up to the statutory maximum. (*Id*. at 14-15). However, before pleading guilty, the Court advised Defendant that it would not make any sentencing decision, including calculating the advisory guidelines range, until it had read and analyzed the PIR and considered any objections from the parties. (*Id*. at 18-19). Defendant confirmed under oath that he understood all of his rights, asserted that his guilty pleas were voluntary, admitted that he was not promised anything that induced him to plead guilty, and acknowledged that no one threatened or coerced him into his guilty plea. (*Id*. at 26-28). Additionally, twice during the Change of Plea hearing, Defendant informed the Court that he was fully satisfied with the representation supplied by counsel. (*Id*. at 7-8, 28). Based upon the Defendant's responses, the Court concluded that Defendant understood all of the rights he was waiving and the potential sentencing exposure and accepted his pleas of guilty to all of the charges. (*Id*. at 29).

This colloquy took place at the Change of Plea Hearing on October 22, 2009. (Docket No. 26). Defendant was not sentenced until almost a full year later on October 4, 2010. (Docket No. 75). During this time period, Defendant had numerous opportunities, including two separate open court hearings, to raise any issue regarding his sentencing. He failed to do so. Upon the preparation of the PIR or issuance of the Tentative Findings detailing that the actual Guideline range was 360 months' imprisonment to life, Defendant did not notify the Court that he pled guilty primarily on counsel's alleged assurance that he would receive a sentence of no more than ten years, or that he did not understand that the Court was not bound by the parties' proffered

advisory guidelines range and could sentence him up to the maximum penalties authorized by law or to a term of imprisonment which exceeded the 360 months which was imposed.

The Court further finds that Defendant has not satisfied his burden to present credible evidence that he would have gone to trial if he had not pled guilty to the charges. In this regard, Defendant's Memorandum of Law in Support of this Motion does not indicate a "reasonable probability" that Defendant would have considered pursuing a trial. (Docket No. 104). When initially contemplating pleading guilty, Defendant acknowledged that his chance of acquittal was "virtually non-existent" given the available evidence, including his own post-arrest statement which he concedes was essentially an admission of guilt. (Docket No. 104 at 4). Defendant further concedes that the enhancements under §§ 2G2.2(b)(3)(B) and 2G2.2(b)(5) "were likely, if not automatic," (*Id*. at 9-10), such that a trial would not have altered the advisory guidelines computation in a manner more favorable to the defense.

Further, had Defendant proceeded to trial rather than pleading guilty, there is a strong possibility he would have suffered a harsher sentence because he would not have received the three-point reduction in his offense level for acceptance of responsibility which was included because of his cooperative and timely plea. In fact, if his offense level was increased by one point to a 43, the advisory guidelines range would have increased from 360 months to life to a term of life imprisonment. *See* U.S.S.G. Ch. 5 Part A. Instead, Defendant received a sentence at the bottom end of the advisory guidelines range of 360 months to life and a sentence which was ten years below the statutory maximum of forty. Based upon these circumstances, it does not appear that a "reasonable probability" exists that Defendant would have legitimately considered going to trial.

In this Court's estimation, Defendant is an intelligent person, having completed his associate's degree in computer science and pursued a bachelor's in the same. (Docket No. 50 at 3-4). In addition to formal education, he has also received additional certificates from various institutions and associations, including the Northeast Ohio Corrections Center, the Skills USA Kentucky Association, the Louisville Technical Institute and the I.C.M. School of Business all of which indicate that Defendant has achieved in various academic settings. (Docket No. 86 at 16). He clearly had the mental capacity and ability to understand the nature and circumstances of the proceedings and the consequences of his guilty plea. The record repeatedly indicates that the Court notified the Defendant of his possible sentencing exposure, and Defendant was given every opportunity over the course of a year to express any of alleged his concerns and he did not.

In all, the Court's extensive and thorough colloquy and Defendant's coherent responses and complete understanding of the parameters of his sentencing demonstrate that Defendant was not prejudiced by the initial erroneous guidelines calculation by his counsel and that of the Government. Instead, the record fully discloses that Defendant understood the potential sentence he faced and entered his guilty pleas knowingly and voluntarily. For all of these reasons, the Court finds that Defendant has failed to meet his burden under *Strickland* and denies Defendant's § 2255 motion to vacate his convictions and sentence.

B.  *Evidentiary Hearing*

It is well established that Defendant is entitled to an evidentiary hearing only if his allegations raise an issue of material fact which must be resolved at a hearing. *United States v. Biberfeld,* 957 F.2d 98, 102 (3d Cir. 1992). The Court may also deny a hearing if the records on file with the Court conclusively prove that Defendant does not have a legally cognizable claim. Here, the Court has examined the record and concluded that Defendant has no legally cognizable

claims. Therefore, consistent with the Court's rulings, the Court denies Defendant's request for an evidentiary hearing.

### V.    CERTIFICATE OF APPEALABILITY

In addition, the Court finds that Defendant has not demonstrated a "substantial showing of the denial of a constitutional right" as required under 28 U.S.C. § 2253(c)(2), and therefore holds that Defendant is not entitled to a certificate of appealability on any of the claims asserted in his motion.

### VI.    CONCLUSION

Based on the foregoing, Defendant's motion to vacate [101] is DENIED. An appropriate Order follows.

_s/Nora Barry Fischer_
Nora Barry Fischer
United States District Judge

Date:   July 23, 2013

cc/ecf:  All counsel of record.

Kelly Hardy
30365-068
FCC Petersburg Medium
P.O. Box 1000
Petersburg, VA 23804-1000